# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | } | |
| | } | |
| Sherlyn Wright, | } | CASE NO.    05-40829-JJR-13 |
| | } | |
| Debtor. | } | CHAPTER:   13 |
| | } | |

_____

| | | |
|---|---|---|
| | } | |
| Sherlyn Wright, | } | |
| | } | |
| Plaintiff, | } | ADV. P. NO.: 05-40186 |
| | } | |
| v. | } | |
| | } | |
| 21st Mortgage Corp., et al. | } | |
| | } | |
| Defendants. | } | |
| | } | |

## <u>MEMORANDUM OPINION</u>

<u>Background and jurisdiction:</u>

On March 11, 2005, the debtor/plaintiff Sherlyn Wright ("Wright") filed a petition for relief under Chapter 13 of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*).  On June 15, 2005, Wright filed her complaint against defendant 21st Mortgage Corporation claiming 21st Mortgage violated provisions of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"), by failing to make required disclosures when it extended a loan to Wright, which she used to finance her purchase of a mobile home.  On June 1, 2006, Wright amended and restated her complaint.  In her amended complaint, Wright still maintained her TILA claim against 21st Mortgage, and she added a claim against 21st Mortgage for breach of contract.  However, the most significant amendments were the

-1-

addition of defendants Minton Industries, Inc., Silver Run Enterprises, LLC, G.B. Daniell d/b/a Daniell Realty Co., Phillip C. Ledbetter, Rodney L. Minton and Terri Harmon, and the claims asserted against them. With one exception,[1] all the claims asserted against the additional defendants were based on violations of the Credit Repair Organizations Act, 15 U.S.C. §1679 *et seq.*, ("CROA" or the "Act"). The new CROA claims were not asserted against 21st Mortgage.

Minton Industries and its two agents, Rodney L. Minton and Terri Harmon (collectively, the "Minton Defendants"), filed a motion to enforce an arbitration agreement they had with Wright. The Court granted their motion, and the prosecution of the claims against the Minton Defendants was stayed pending the outcome of the arbitration proceedings. The remaining defendants filed answers to the amended complaint and generally denied any liability to Wright. Defendant 21st Mortgage's answer included a cross claim against all the other defendants, including the Minton Defendants. Defendants Daniell, Ledbetter and Silver Run (collectively, the "Movants") filed motions seeking summary judgment in their favor on all counts in the amended complaint. For the reasons stated below, the Court finds the Movants' motions are due to be granted.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the general order of reference by the District Court. To the extent this is a non-core proceeding, Wright and the Movants have expressly consented to the Court entering a final order pursuant to 28 U.S.C. § 157(c)(2).

<u>Standard of review, findings of facts, and question of law to be decided:</u>

For purposes of ruling on the Movants' motions, the Court has liberally construed the

---

[1] The amended complaint included a claim for the "recovery of money paid," which was only asserted against defendant Minton Industries.

Case 05-40186-JJR    Doc 165    Filed 05/16/07    Entered 05/16/07 12:02:58    Desc Main
Document    Page 2 of 23

amended complaint and the exhibits thereto in a light most favorable to Wright and treated the material allegations of the amended complaint as true.[2] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587-88 (1986); *Brown v. Crawford*, 906 F.2d 667 (11th Cir. 1990). Wright alleged Silver Run executed and recorded a warranty deed that conveyed a mobile home lot in her name, and Daniell and Ledbetter appraised the lot. Although the amended complaint is somewhat unclear, apparently Wright contends Silver Run executed and recorded the deed without her permission, or at least not for the consideration evidenced by the deed.[3] In any event, Silver Run allegedly made the deed for the purpose of falsely enhancing Wright's creditworthiness, credit standing, and credit capacity in the eyes of 21st Mortgage, to whom she had applied for a loan to finance her purchase of a mobile home. In other words, the deed was made to mislead 21st Mortgage into believing Wright owned the real estate on which the mobile home would be installed, and she

---

[2]The Movants filed affidavits supporting their motions for summary judgment. These affidavits set forth facts which could be construed as rebutting the factual allegations of wrongdoing in the amended complaint. Nonetheless, as hereafter discussed, the Court's ruling on the Movants' motions is based on answering a question of law and not the facts contested in the affidavits, other than the uncontested assertion that the Movants are not credit repair organizations.

[3] A copy of the deed, dated July 14, 2004, was attached to the amended complaint as Exhibit D. It recites the consideration paid by Wright to Silver Run as "one dollar and other good and valuable consideration." According to the notation made by the Talladega County Probate Office in the lower margin of the deed, recording tax of $9.00 was paid when the deed was recorded. Recording tax for a deed is based on the value of the property conveyed and is calculated at the rate of $.50 for each $500 or fraction thereof in value. Ala. Code § 40-22-1 (1975). Thus, whoever recorded the deed declared the value of the mobile home lot to be $9,000. Almost a month earlier, the appraisal of the vacant lot submitted to 21st Mortgage by defendants Daniell and Ledbetter set its value at $33,000. Exhibits G and H attached to the amended complaint appear to be part of the loan closing paperwork submitted by the Minton Defendants to 21st Mortgage. On the lines calling for the amount of Wright's down payment, there appears the hand-written notation "Land Equity," but no dollar amount is shown. On the lines labeled "Land Purchase Price," the notation "N/A" is written on Exhibit G and is blank on Exhibit H.

-3-

was in a position to offer 21st Mortgage a mortgage on this real estate as additional collateral and

equity for the proposed loan. Wright contends Daniell and Ledbetter submitted an untrue appraisal

of the mobile home lot to 21st Mortgage and likewise misled 21st Mortgage with respect to Wright's

creditworthiness, credit standing, and credit capacity.[4]

As mentioned above, all claims asserted in the amended complaint against the Movants are

based on violations of CROA; however, Wright does not allege any of the defendants, including the

Movants, is a "credit repair organization" as defined in CROA §1679a(3).[5] In fact, the allegations

---

[4]The Court assumes Wright contends the appraisal was untrue because it falsely inflated the value of the mobile home lot. As mentioned in footnote 3, *supra*, the appraised value of the vacant lot as of July 14, 2004, was $33,000, significantly more than the $9,000 value on which the deed recording tax was paid. The loan closing documents (Exhibits E-1, E-2, G and H to the amended complaint) disclose Minton Industries or an affiliate was paid $10,000 for improvements to the lot, which still does not explain the difference in the lot's appraised value and the $9,000 value reflected by the deed recording tax. Wright's Credit Application (Exhibit B to the amended complaint) is dated June 18, 2004, the deed is dated July 14, 2004, and the Installment Contract-Security Agreement to 21st Mortgage is dated July 21, 2004. Although there appear to be several factual issues in this case, there are no allegations in the amended complaint explaining why the Movants made the alleged misrepresentations about Wright's creditworthiness to 21st Mortgage or what benefit they received from their actions. During arguments before the Court, Plaintiff's counsel alluded to payments made to Minton Industries or its affiliate from the 21st Mortgage loan proceeds to compensate Minton for improvements to the mobile home lot. Apparently, Wright contends these improvements either were not made, or were already in place before she purchased the mobile home. Wright's position that she was completely unaware of the defendants' wrongdoings and was duped is not fully supported by the underlying paperwork evidencing the purchase and financing of the mobile home. In any event, such inconsistencies in Wright's position were not taken into consideration in the Court's ruling herein, which is limited to answering a question of law, not of fact.

[5] In § 1679a(3) of CROA, the term credit repair organization --
    "(A) means any person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform (or represent that such person can or will sell, provide, or perform) any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of--
        (i) improving any consumer's credit record, credit history, or credit rating; or
        (ii) providing advice or assistance to any consumer with regard to any

-4-

do not identify any person, whether as a defendant or non-party, who was involved in the operative facts and who can be remotely identified as a credit repair organization. The Movants argue that because they are not credit repair organizations and the only claims asserted against them are based on violations of the Act, they are entitled to summary judgment in their favor as a matter of law. Wright counters by arguing the plain language of CROA extends liability to any person who is guilty of violating the practices prohibited by § 1679b(a)(1) of the Act, regardless of whether such person is a credit repair organization. Thus, the only issue to be decided is a question of law. No doubt the Movants would prefer to frame this question as follows: If the factual allegations of the amended complaint are true, but none of the Movants was a credit repair organization, can the Movants still be held liable under CROA § 1679b(a)(1)? Nonetheless, for the reasons discussed below, the Court believes the question should be more broadly framed, to-wit: If the factual allegations in the amended complaint are true, but *no person involved in such facts* was a credit repair organization, can the Movants still be held liable under CROA § 1679b(a)(1)?[6]

---

activity or service described in clause (i) . . . ."

Plaintiff's counsel candidly admitted during arguments that Wright does not contend any of the defendants is a credit repair organization. The affidavits filed by the Movants in support of their motions for summary judgment state in a conclusory fashion that the Movants are not credit repair organizations under CROA.

[6]When the Court announced its order granting the Minton Defendants' motion to compel arbitration, it expressed doubt about whether the remaining defendants could be held liable under CROA. Since the factual allegations in the amended complaint asserted against the Movants appeared adequate to support state law claims of fraud, deceit and possibly other non-CROA theories of liability, the Court granted Wright leave to further amend her complaint to assert claims based on non-CROA theories. Wright chose not to further amend her complaint, and she relies on CROA as her sole theory of recovery against the Movants.

Case 05-40186-JJR    Doc 165    Filed 05/16/07    Entered 05/16/07 12:02:58    Desc Main
Document      Page 5 of 23

<u>Discussion and conclusions of law:</u>

Wright argues any person, not just a credit repair organization and its affiliates, can be held liable for violating certain practices prohibited by CROA. She bases her argument on § 1679b(a)(1),[7] entitled "Prohibited practices." This section reads:

(a) In general

No person may --

(1) make any statement, or counsel or advise any consumer to make any statement, which is untrue or misleading (or which, upon the exercise of reasonable care, should be known by the credit repair organization, officer, employee, agent, or other person to be untrue or misleading) with respect to any consumer's creditworthiness, credit standing, or credit capacity to --

(A) any consumer reporting agency (as defined in section 1681a(f) of this title); or

(B) any person --

(i) who has extended credit to the consumer; or

(ii) to whom the consumer has applied or is applying for an extension of credit . . . .

Admittedly, if § 1679b(a)(1) was lifted from the remainder of the Act and viewed as a stand-alone statute and then pared down to its bare essentials, it would provide: No person may make any untrue statement about a consumer's creditworthiness to any credit reporting agency or any other person who has extended credit to such consumer, or to whom the consumer has applied or is applying for an extension of credit. Although CROA does not specifically define "person," unquestionably the term includes natural persons, such as defendants Daniell and Ledbetter.

---

[7]More precisely, Wright's claim is based on § 1679b(a)(1)(B)(ii).

-6-

Defendant Silver Run is a limited liability company,[8] but it does not contend the Act does not include artificial persons such as corporations and limited liability companies.

Wright is not alone in taking the position that liability under CROA extends to persons who are not credit repair organizations, or in some capacity, are not affiliated with such an organization. In the brief opposing the Movants' motions, Wright's counsel cites several district court cases from the Northern District of Illinois that appear to support Wright's position. In some of these cases (most of which are unpublished) the district courts held that under the plain language of § 1679b(a), CROA extended liability to persons who committed a prohibited practice even though they were not credit repair organizations as defined in § 1679a(3).

In *Vance v. National Benefit Association,* defendant Spirit Bank sought dismissal from a complaint alleging it had violated CROA. 1999 WL 731764 (N.D. Ill. Aug. 30, 1994). In his opinion, Judge Leinenweber recognized the Act specifically excludes banks from the definition of credit repair organizations,[9] but he ruled certain CROA prohibitions apply to any "person," regardless of whether such person falls within the definition of a credit repair organization. In denying Spirit Bank's motion to dismiss, Judge Leinenweber stated, "[the] complaint alleges a violation of § 1679b(a), which prohibits any 'person' from engaging in certain conduct. Therefore, the court finds that Spirit Bank is subject to the CROA provision at issue here, 15 U.S.C. § 1679b(a)."

Unlike Wright's complaint in the instant case which alleges a violation of § 1679b(a)(1), the

---

[8] Affidavit of Dwight K. Rice filed in support of Silver Run's motion for summary judgment.

[9] 15 U.S.C. § 1679a(3)(B)(iii).

-7-

complaint in *Vance* was based on violations of §§ 1679b(a)(3)and(4). Subsection (3) states, "No person may make or use any untrue or misleading representations of the services of *the credit repair organization*." (emphasis added). Subsection (4) provides, "No person may engage, directly or indirectly, in any act, practice or course of business that constitutes or results in the commission of . . . a fraud or deception . . . in connection with the offer or sale of the services of *the credit repair organization*." (emphasis added). In *Vance*, the plaintiff asserted his CROA claims against Spirit Bank because of misleading statements allegedly made by the Bank with respect to the services of co-defendant NBA, an undisputed credit repair organization. Thus, a major difference in the facts now being considered by this Court and those considered by the *Vance* court is that in *Vance*, one of the defendants was a credit repair organization.

In *Bigalke v. Creditrust Corporation*, the court found the factual allegations in the plaintiff's complaint were sufficient to support a finding that defendant Creditrust was a credit repair organization under CROA and was potentially liable to the plaintiff under §§ 1679b(a)(3) and (4). 162 F.Supp.2d 996 (N.D. Ill. 2001). Nonetheless, the court continued its analysis of Creditrust's potential liability under CROA and determined it was unnecessary for Creditrust to be a credit repair organization to be liable. "Here, Bigalke alleges Creditrust violated section 1679b(a(3)and (4). Therefore, even if Creditrust is not a credit repair organization, this Court finds, under *Vance* and the plain language of the CROA, that Bigalke has adequately stated a claim under the CROA." *Id.* at 998.

In *Parker v. 1-800 Bar None, a Financial Corporation, Inc.,* the plaintiff's CROA claims, like those in *Vance* and *Bigalke*, were based on §§ 1679b(a)(3) and (4). 2002 WL 215530 (N.D. Ill. Feb. 2, 2002). The *Parker* court held the well-pled factual allegations of the complaint were

-8-

sufficient to find defendant Bar None was a credit repair organization under the Act. The complaint did not allege that co-defendant Gateway Chevrolet, an automobile dealership, was a credit repair organization. As in *Bigalke*, the *Parker* court did not stop its analysis of CROA liability after finding defendant Bar None was a credit repair organization. The court continued its analysis and ruled that:

> Unlike section 1679a [sic], section 1679b(a) applies to "persons" which encompasses a broader group than credit repair organizations.
>
> * * *
>
> Thus, even had this Court concluded that Bar None is not a credit repair organization under the [A]ct, that finding would not be sufficient to dispose of Parker's claim against it. Likewise, regardless of whether Gateway is a credit repair organization under the [A]ct, section 1679b(a) applies to it as well.

*Id.* at *5.

The facts described by the courts in *Bigalke* and *Parker* support their findings that one of the defendants in each case was a credit repair organization within the definition in § 1679a(3). However, in neither case did the courts find a co-defendant or other person involved in the operative facts fell within the statutory definition of a credit repair organization. Accordingly, this Court does not agree with the *Bigalke* and *Parker* courts' fall-back position that defendants can be held liable under §§ 1679b(a)(3) and (4), even when neither the defendants, nor anyone else involved in the transaction was a credit repair organization. The CROA claims in *Bigalke* and *Parker*, like those asserted in *Vance*, were based on §§ 1679b(a)(3) and (4). As mentioned above, these two subsections prohibit any person from misrepresenting the services of a credit repair organization or committing a fraud or deception in connection with the offer or sale of the services of a credit repair organization. Therefore, it necessarily follows that for subsections (3) and (4) to be the basis of liability, there must be a credit repair organization involved in the underlying facts. If not, whatever services were misrepresented or were the basis for a fraud or deception could not have been those

-9-

of a credit repair organization.  In *Bigalke*, the only person alleged  to be a credit repair organization was defendant Creditrust, and in *Parker* the only person alleged to be a credit repair organization was defendant Bar None.  If neither of these defendants filled the role of a credit repair organization, and no other person involved in the operative facts qualified for that role, a necessary element in holding a "person" liable under §§ 1679b(a)(3) and (4) was missing.

The facts in *Vance, supra,* distinguish it from *Bigalke* and *Parker*.  In *Vance*, Spirit Bank's alleged misrepresentation was made with respect to the services of a co-defendant, an undisputed credit repair organization.  Although under the Act's definition Spirit Bank could not have been a credit repair organization, it still could be held liable under §§ 1679b(a)(3) and (4) as the person who misrepresented the <mark>services of NBA, a credit repair organization</mark>.  *Vance*, 199 WL at *4.  In *Bigalke* and *Parker*, the courts reasoned that even if the defendants were not credit repair organizations, they still could be liable under §§ 1679b(a)(3) and (4).  As mentioned above, this backup theory of liability is flawed because, unlike the operative facts in *Vance*, no other person was identified as the credit repair organization whose services were misrepresented or made the basis of a fraud or deception.  When a plaintiff alleges a defendant is liable for violating § 1679b(a)(3) or (4), the complaint must identify the credit repair organization which was involved in the operative facts, whether or not such organization is also named as a defendant.  If there is no credit repair organization, there simply cannot be "any untrue or misleading representation of the services of *the credit repair organization*" or "a fraud or deception on any person in connection with the offer or sale of the services of *the credit repair organization*." 15 U.S.C. §§ 1679b(a)(3) and (4) (emphasis added).

The theory of liability underlying the CROA claim in *Rodriguez v. Lynch Ford, Inc.* was

-10-

more akin to that alleged by Wright in the instant case than those alleged by the plaintiffs in the other Northern District of Illinois cases discussed above. 2004 WL 2958772 (N.D. Ill Nov. 18, 2004). Plaintiffs Rodriguez and Lopez alleged the Ford dealership, from whom Lopez was purchasing a car, falsely represented to the bank, which was financing the purchase, that the sole purchaser of the car was Rodriguez. Actually, Lopez was either to be the sole purchaser or at least a co-purchaser. The dealership only submitted the paperwork signed by Rodriguez to the bank and thereby altered the identification of the consumer (i.e. Lopez) who was applying for an extension of credit. The CROA claims in *Rodriguez* were based on § 1679b(a)(2). That section prohibits a person from making statements to a consumer's creditor or anticipated creditor that are intended to alter a consumer's identification and thereby prevent an accurate disclosure of the consumer's credit record. The *Rodriguez* court found plaintiff Lopez had raised a question about a material fact sufficient to avoid summary judgment in favor of the dealership.

The *Rodriguez* plaintiffs relied on CROA § 1679b(a)(2), and Wright in the instant case relies on CROA § 1679b(a)(1). Both of these subsections prohibit *persons* from making false statements about a consumer's credit or identity to the consumer's creditor or anticipated creditor. If read in the abstract, §§ 1679b(a)(1) and (2) (unlike §§ 1679b(a)(3)and (4)), prohibit practices not *expressly* involving the services or activities of a credit repair organization. Thus, when compared with the other Northern District of Illinois cases discussed above, *Rodriguez* lends more support to the theory of CROA liability relied on by Wright in the instant case.

The facts in *Costa v. Mauro Chevrolet, Inc.* are similar to those in *Rodriguez*. 390 F.Supp. 2d 720 (N.D. Ill. 2005). In *Costa*, the plaintiffs alleged the defendant Chevrolet dealership violated CROA § 1679b(a)(2)(B)(ii) when it "falsely represented to GMAC that Costa was the purchaser of

-11-

the vehicle and hid from GMAC the true purchaser, Alvarado, by 'writing the deal up in Costa's name only.'" *Id.* at 728. The dealership argued that because it was not a credit repair organization, it could not be held liable for CROA violations. In rejecting this argument, the court stated:

> This contention has been rejected numerous times in caselaw in this district, including by this Court in its prior order (D.E.25) granting Defendants' initial motions to dismiss this case. *See, e.g. Rodriguez v. Lynch Ford, Inc., No. 03 C 7727, 2004 WL 2958772, *5 (N.D.Ill. Nov. 18, 2004); Parker v. 1-800 Bar None, No. 01-4488, 2002 WL 215530, *5 (N.D.Ill. Feb. 12, 2002); Bigalke v. Creditrust Corp., 162 F.Supp.2d 996, 999 (N.D.Ill. 2001); Vance v. Nat'l Benefit Ass'n, No. 99 C 2627, 1999 WL 731764, *4 (N.D.Ill. Aug. 26, 1999).* Caselaw in this district teaches that, even where a plaintiff cannot prove that the defendant is a credit repair organization within the meaning of section 1679a(3)(A) of the CROA, the plaintiff potentially "can nevertheless state a claim ... under section 1679b of the CROA." *Parker*, 2002 WL 215530 at *5.
>
> Section 1679b provides that it is a violation of the CROA for any "person" to "make any statement, or counsel or advise any consumer to make any statement, the intended effect of which is to alter the consumer's identification to prevent the display of the consumer's credit record, history, or rating for the purpose of concealing adverse information that is accurate and not obsolete...." 15 U.S.C. § 1679b(a)(2)(B)(ii). Normally, when Congress uses different terms in this manner in the same statute, Congress's choice to employ different terms (at least in the absence of contrary evidence) means that the two terms have different meanings. *See generally Treadway v. Gateway Chevrolet Oldsmobile, Inc., 362 F.3d 971, 975 (7th Cir. 2004)* (analysis of CROA questions "must begin with the language of the statute itself.") (citation omitted). The term "person" in the law certainly encompasses a broader universe of individuals and entities than the term "credit repair organization" employed and defined in Section 1679a. *Accord, e.g., Bigalke, 162 F.Supp.2d at 999* (holding that even if defendant is not a credit repair organization within the meaning of section 1679a(3)(A), section 1679b applies to the defendant). Defendants point to nothing in the text or legislative history of the CROA to suggest that "person" should not be afforded its ordinary and broader meaning than "credit repair organization." Accordingly, the Court finds that, to sustain a claim under the plain language of section 1679b of the CROA, Plaintiffs need not allege that Mauro Chevrolet is a "credit repair organization."
>
> *Id.* at 727-28.

The next decision to be reviewed in the assemblage of CROA cases from the Northern

-12-

District of Illinois is *Lacey v. William Chrysler Plymouth Inc.,* 2004 WL 415972 (N.D. Ill. Feb. 23, 2004). Lacey alleged that defendant Guesthouse, who was assisting Lacey with arranging automobile financing, instructed Lacey to misrepresent her income to any finance company who called her about the financing. The facts alleged in *Lacey* appear to fall squarely within the practices prohibited by § 1679b(a)(1)(B)(ii), which provides, "No person may . . . advise any consumer to make any statement, which is untrue or misleading . . . to . . . any person . . . to whom the consumer has applied or is applying for an extension of credit."

Defendants Guesthouse and William Chrysler moved for summary judgment, arguing that because Guesthouse was not in the business of credit improvement, he could not be held liable under CROA. In denying the defendants' motion for summary judgment, the court reasoned:

> While the court doubts that Congress intended § 1679b to apply to every person within the jurisdiction of the United States, whether or not they engaged in the business of credit improvement, the court is bound by the language of the statute. Unlike § 1679a[sic], which only applies to credit repair organizations, § 1679b applies to "persons." This court has repeatedly held that defendants can be held liable under § 1679b even if the defendants are not credit repair organizations. (citations omitted).
>
> Defendants argue that the term "persons" in § 1679b is limited by the parenthetical reference in § 1679b(1)[sic] to the standard of care required of "the credit repair organization, officer, employee, agent, or other person." However, the choice of the disjunctive term "or" suggests that Congress intended "credit repair organization" and "other person" to be interpreted as alternatives. Rather than limiting the initial reference to "persons" to those engaged in the business of credit improvement the parenthetical clause explicitly provides that reasonable care is required of persons "other" than credit repair organizations and their officers, employees and agents. Thus, according to the plain language of the statute, Greenhouse can be held liable for violations of § 1679b(a)(1). The court denies defendants' motion for summary judgment as to Count IV.
>
> *Lacey*, 2004 WL at *7.

In the case now being considered by this Court, Wright alleges the Movants were the ones

-13-

who made the untrue and misleading statements to 21st Mortgage, a person to whom Wright had applied for an extension of credit. In *Lacey*, the defendants allegedly advised the plaintiff to make the untrue and misleading statements to the potential creditor. Thus, although the facts in *Lacey*, *Rodriguez* and *Costa* are different from those alleged by Wright in the case before this Court, the theories of CROA liability pled by Wright and those pled by the plaintiffs in these three Northern District of Illinois cases were all based on violations of subsections of § 1679b(a). The plaintiff in *Lacey*, like Wright, based her CROA claim on subsection (a)(1)(B)(ii), and the plaintiffs in *Rodriguez* and *Costa* based their CROA claims on subsection (a)(2)(B)(ii). Inasmuch as the courts in *Lacey*, *Rodriguez* and *Costa* all held that a defendant may be held liable under § 1679b(a) without the necessity of a credit repair organization being involved in the transaction, they obviously support Wright's position. However, an attenuation of *Lacey*, *Rodriguez* and *Costa* is they cite virtually no authority outside their own district concluding § 1679b(a) can be the basis of liability even when no credit repair organization is involved in the events giving rise to the claim. This does not mean the Northern District of Illinois courts were wrong. It does, however, underscore the dearth of authority dealing with this issue.[10]

Another CROA decision coming out of the Northern District of Illinois is *Plattner v. Edge Solutions, Inc.,* 422 F.Supp.2d 969 (N.D. Ill. 2006). The CROA claims in *Plattner* were based on §§ 1679b(b), 1679c, 1679d(1) and 1679e, not § 1679b(a). The *Plattner* court found defendant Edge Solutions was not a credit repair organization and concluded, "[s]ince the provisions Plattner alleged that Edge violated (15 U.S.C. § 1679b(b), § 1679c, § 1679d, and § 1679e) limit their prohibitions

---

[10]*Lacey* and *Rodriguez* are unpublished decisions; thus the Court is limited in the extent it is willing to rely on the holding in these two decisions.

and requirements to credit repair organizations, summary judgment is granted in favor of Edge as to Counts I-IV." *Id.* at 976-77. Citing *Costa, supra,* as an example, the *Plattner* court noted:

> [I]n several cases discussing the statutory definition of a credit repair organization, the courts ultimately held that the defendant could be liable whether or not the defendant was a credit repair organization. In those cases, however, the plaintiff alleged violations of 15 U.S.C. § 1679b(a), which states that "[n]o *person* may" violate the provisions of that section; hence, the courts held that person is broader than credit repair organization, and that a finding that the defendant was a credit repair organization was [sic] [not] required for liability.

> *Id.* at 972 n.2

It is difficult to ascertain from the above dicta whether the *Plattner* court agreed or disagreed with the *Costa* interpretation of CROA because the claims in *Plattner* did not involve § 1679b(a). Nonetheless, it is worth observing that the *Plattner* court politely questioned the pertinency of the authorities cited by its sister court in *Parker v. 1-800 Bar None, supra,* to ascertain how Congress intended for courts to construe CROA.

> The court acknowledges that another court in this district has stated: "In enacting the [Consumer Credit Protection Act], of which the CROA is part of, Congress intended for courts to broadly construe its provisions in accordance with its remedial purpose." *Parker v. 1-800 Bar None, a Financial Corp., Inc.,* No. 01 C 4488, 2002 WL 215530, at *2 (N.D.Ill. Feb.12, 2002) (citing *Brothers v. First Leasing,* 724 F.2d 789, 793 (9th Cir. 1984)). "Moreover, courts should construe consumer protection statutes liberally in favor of consumers." *Id.* (citing *Bizier v. Globe Fin. Serv., Inc.,* 654 F.2d 1, 3 (1st Cir. 1981)) (internal quotation omitted). The cases cited by the court in *Parker,* however, were decided prior to the enactment of the CROA. *Given that Congress codified its findings and purposes as part of the CROA, it is proper for the court to interpret the CROA in light of Congress' expressed intent.*

> *Plattner,* 422 F.Supp.2d at 973, n. 3 (emphasis added).

The Act begins with Congress' findings and purposes:

> (a) Findings

> (1) Consumers have a vital interest in establishing and maintaining their

-15-

creditworthiness and credit standing in order to obtain and use credit. As a result, consumers who have experienced credit problems may seek assistance from credit repair organizations which offer to improve the credit standing of such consumers.

(2) Certain advertising and business practices of some companies engaged in the business of credit repair services have worked a financial hardship upon consumers, particularly those of limited economic means and who are inexperienced in credit matters.

15 U.S.C. § 1679(a).

(b) Purposes

(1) to ensure that prospective buyers of the services of credit repair organizations are provided with the information necessary to make an informed decision regarding the purchase of such services; and

(2) to protect the public from unfair or deceptive advertising and business practices by credit repair organizations.

15 U.S.C. § 1679(b).

In addition to discussing Congress' findings and purposes codified in the Act itself, the *Plattner* court quoted extensively from the House Report, which "also sheds light on Congress' purpose and intent in enacting the CROA."[11]  *Id.* at 973.  A reading of the codified congressional findings and

---

[11]  "The credit repair business involves the marketing of credit repair services to consumers whose consumer reports contain adverse information that interferes with their ability to obtain credit.  According to the FTC, these businesses, through advertisements and oral representations, lead consumers to believe that adverse information in their consumer reports can be deleted or modified regardless of its accuracy.... Such representations by credit repair clinics are often misleading, and consumers, mostly low- and moderate-income individuals, are cheated out of the money they paid for services.  H.R.Rep. No. 103-486, at 57 (1994).  The Report further states that credit repair companies often "inundat[e] consumer reporting agencies with so many challenges to consumer reports that the reinvestigation system breaks down, and the adverse, but accurate, information is deleted. [citation omitted]. [The CROA] seeks to regulate the industry to ensure that consumers are provided with necessary information about credit repair organizations so that they can make informed decisions regarding the purchase of their services and to protect the public from unfair and deceptive advertising and business practices by the industry."

-16-

purposes, as well as the House Report, reveals Congress was concerned about the harm being caused by an unregulated credit repair industry's unscrupulous practices, particularly the harm to consumers of limited economic means who are often inexperienced in credit matters. Nothing in the codified findings and purposes or the House Report mentions any congressional concerns about misrepresentations or other unscrupulous practices associated with consumer credit transactions that do not involve the credit repair industry. Nor was there any mention of congressional intent to extend federal court jurisdiction to all causes of action based on an untrue or misleading statement made by *any person* about a consumer's creditworthiness. Extending the reach of § 1679b(a)(1) to any person, regardless of whether the transaction giving rise to the claim involved a credit repair organization, would create a federal cause of action for any untrue communication involving a consumer's creditworthiness made to the consumer's creditor or anticipated creditor without an amount-in-controversy threshold.

It is difficult to argue that "person" in § 1679b(a) should be limited only to persons who are credit repair organizations, especially in light of the language in the parenthetical phrase in that section:

> No person may--
> (1) make any statement, or counsel or advise any consumer to make any statement, which is untrue or misleading (or which, upon the exercise of reasonable care, should be known by *the credit repair organization*, officer, employee, agent, *or other person* to be untrue or misleading) with respect to any consumer's credit worthiness, credit standing, or credit capacity to . . . .
>
> (emphasis added).

As was duly noted by the court in *Lacey*, "the choice of the disjunctive term 'or' suggests that

_____

*Plattner*, 422 F.Supp.2d at 973.

-17-

Congress intended 'credit repair organization' and 'other person' to be interpreted as alternatives." *Lacey*, 2004 WL at *7. Within the limits discussed below, this Court agrees the plain language of the Act does suggest the word "person" in § 1679b(a) includes potential defendants who might not fall within the Act's definition of credit repair organizations. 11 U.S.C. § 1679a(3). Nonetheless, this Court does not agree that the parenthetical language in § 1679b(a)(1) eliminates any question of how expansive Congress intended CROA to be.[12]

Not all reported cases involving CROA are out of the Northern District of Illinois. In *Polacsek v. Debticated Consumer Counseling, Inc.*, the District Court for the District of Maryland was faced with the issue of whether a credit counseling agency ("CCA") could be subject to CROA. 413 F.Supp.2d 539 (D.Md. 2005). The court determined an organization does not necessarily have to be wholly either a CCA or credit repair organization, and it ruled, "where, as a substantial part of its activity, a CCA, using an instrumentality of interstate commerce, undertakes for pay to sell, provide or perform any service to improve a consumer's credit record, credit history, or credit rating, CROA literally and ineluctably applies." *Id.* at 546. According to the court's opinion in *Polacsek*, the activities of an organization, not what it calls itself, determines whether it will be held to be a credit repair organization under CROA.

A close examination of the facts underlying the *Polacsek* court's ruling is helpful in

---

[12]As discussed in more detail below, the Court concludes that, in light of the codified findings and purposes and congressional history, Congress intended claims made under CROA to have some connection with the credit repair industry. It is worth noting in the parenthetical language of § 1679b(a)(1), "other person" is preceded by "credit repair organization," and the latter is identified with the definite article "the," as opposed to the indefinite article "a." The use of the definite article adds to this Court's belief that when an "other person" is charged with a CROA violation, *the* credit repair organization must be found in the operative facts as a defendant or non-party as a necessary element to state a claim under the Act.

Case 05-40186-JJR    Doc 165    Filed 05/16/07    Entered 05/16/07 12:02:58    Desc Main
Document      Page 18 of 23

answering the question of law that must be answered by this Court. In *Polacsek*, there were two individual defendants, Eriks and Andris Pukke. In footnotes, the court stated:

> Only Debticated and the non-Defendant credit counseling agencies, as well as DebtWorks, are potentially credit repair organizations within the meaning of CROA. Individual Defendants Eriks and Andris Pukke will at most be liable for CROA violations if they are deemed to be "persons" within the meaning of 15 U.S.C. 1679(b)(a) or if they are deemed to so effectively control the CCAs that the corporate veils of the CCAs and/or DebtWorks should be pierced.
>
> *Id.* at n.1.
>
> * * *
>
>  The Court holds that DebtWorks . . . provided and performed credit repair services and was a credit repair organization in its own right. . . . DebtWorks' status as a credit repair organization is beyond dispute. DebtWorks may also qualify under § 1679b(a) of CROA, as a "person" who [violated §§ 1679b(a)(3) and (4)]. . . . To the extent that Andris Pukke and Eriks Pukke effectively controlled DebtWorks, Debticated, or one or more of the non-Defendant CCAs and *participated in or acquiesced in violations of CROA by these entities*, they may be held individually subject to the Act.
>
> *Id.* at n.4 (emphasis added).

In holding the two individual defendants would be liable for CROA violations if they were deemed to be "persons" within the meaning of § 1679b(a), the *Polacsek* court did not state whether their liability would be under subpart (1), (2), (3) or (4) of § 1679b(a). Nonetheless, it appears the court found the two individual defendants were potentially liable as "persons" under § 1679b(a) because of their *participation* in the activities of a credit repair organization, as opposed to any independent conduct not involving the operations or services of a credit repair organization.

The final Northern District of Illinois case to be discussed is *White v. Financial Credit Corp.*,

-19-

2001 WL 1665386 (N.D.Ill. Dec. 27, 2001).[13]  Judge Leinenweber's opinion in *White* followed his

earlier CROA decision in *Vance v. Nat'l Benefit Ass'n, supra.*  In *White*, the plaintiff argued that

language used by a creditor in collection letters caused the creditor to become a credit repair

organization under CROA § 1679a(3).  The court disagreed with the plaintiff's argument, and it went

on to say that even if the creditor was a credit repair organization, the fact that it informed the

plaintiff if he paid his debt the creditor would report the debt as paid, was not misleading and

therefore not a violation of §§ 1679b(a)(3) or (4).  When Judge Leinenweber stated his reasons for

ruling against the plaintiff, he offered some insight into his approach to interpreting the Act:

> The court disagrees with . . . [the plaintiff's] interpretation of the statute.  Statutes are
> not interpreted in a vacuum.  *Smith v. Zachary,* 255 F.3d 446, 448 (7th Cir. 2001).
> The court ascribes to the statutory language its plain meaning, but "the meaning of
> statutory language, plain or not, depends on context."  *Holloway v. U.S.,* 526 U.S. 1,
> 7 (1999) (*quoting King v. St. Vincent's Hosp.,* 502 U.S. 215, 221 (1991).  "It is a
> fundamental canon of statutory construction that words of a statute must be read in
> their context and with a view to their place in the overall statutory scheme."  *FDA v.*

---

[13]  There are other reported decisions from the Northern District of Illinois involving the application of CROA not discussed in this opinion, e.g. *Iosello v. Lexington Law Firm,* 2003 WL 21920237 (N.D.Ill. Aug. 12, 2003) (finding the practices of a law firm may cause it to be a credit repair organization under the statute); *Nielsen v. United Creditors Alliance Corp.,* 1999 WL 674740 (N.D.Ill. Aug. 23, 1999) (holding the practices of a debt collector may cause it to be a credit repair organization under CROA).  In addition to the Northern District of Illinois, courts from other jurisdictions have reported cases involving CROA, e.g. *Zimmerman v. Cambridge Credit Counseling Corp.*, 409 F.3d 473 (1st Cir. 2005) (circuit court vacated the district court's dismissal of a consumer class action suit against providers of credit counseling services for violations of CROA on grounds the IRS's classification of the service as a tax-exempt entity was not dispositive of whether it came within the CROA exemption for tax-exempt nonprofits); *Limpert v. Cambridge Credit Counseling Corp.*, 328 F.Supp.2d 360 (E.D.N.Y. 2004) (denying the defendant's motion to dismiss a consumer class action against it under CROA and other consumer protection statutes on grounds factual issues remained as to whether the defendant company provided credit repair services); *Wojcik v. Courtesy Auto Sales, Inc.*, 2002 WL 31663298 (D.Neb. Nov. 25, 2002) (granting defendant auto dealership's motion for summary judgment on grounds it was not a credit repair organization under CROA); *Sannes v. Jeff Wyler Chevrolet, Inc.*, 1999 WL 33313134 (S.D. Ohio Mar. 31, 1999) (finding CROA inapplicable to an automobile dealership).

*Brown & Williamson Tobacco Corp.,* 529 U.S. 120, 133 (2000) (*quoting Davis v. Michigan Dept. of Treasury,* 489 U.S. 803, 809 (1989)).

> *The plain statutory language, viewed in the context of its stated purpose, leaves no doubt that the CROA is aimed at companies that are in the business of performing "any service . . . in return for" money for the purpose of improving a party's credit history.* FCC [the defendant] is not in that business . . . .

*White* at *5-6 (emphasis added).

When CROA § 1679b(a)(1) is taken out of the context of the remainder of the Act, its plain language appears to extend liability to any person who might be found guilty of committing one of the prohibited practices, regardless of whether the practice involved a credit repair organization. However, "[t]he plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which the language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). Section 1679b(a)(1) should be construed within the context of the entire Act, including its codified findings and purposes, not as if § 1679b(a)(1) were a stand-alone statute. When it enacted CROA, the focus of Congress was on the credit repair industry, not enacting a federal cause of action creating liability for every person guilty of making defamatory statements about a consumer's creditworthiness. Remedies for such wrongs are adequately provided for under state tort laws. This Court cannot assume Congress intended to add a federal question cause of action to the dockets of federal courts without some mention of its reasons for doing so in the codified findings and purposes or in the Act's legislative history.[14] The congressional findings, purposes and history only discuss the credit

---

[14]Such a cause of action could be pursued in federal court regardless of the amount in controversy or the diversity of citizenship of the parties. Federal courts and their juries would be required to hear cases involving consumer loans of any amount where the consumer claims someone (who could be any "person") gave misinformation to the consumer's potential creditor who, based on the misinformation, refused to extend the loan. If Congress intended to create

repair industry, nothing more.

Accordingly, this Court holds liability under CROA is limited to credit repair organizations as defined in § 1679a(3), *and* persons who are not credit repair organizations but nonetheless are guilty of the practices prohibited by § 1679b(a)(1) in connection with the activities of, or transactions involving a credit repair organization. The codified purposes of CROA are not served by interpreting § 1679b(a)(1) as creating a federal cause of action that can be asserted against any "person" guilty of making an untrue or misleading statement with respect to a consumer's creditworthiness, where the operative facts, such as those in the instant case, do not relate to the credit repair industry or anyone who falls within the definition of a credit repair organization.[15] None of the Movants or other defendants in this case is a credit repair organization, and the events giving

---

such a federal cause of action, it would have been a better fit as an amendment to the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*

[15] It is not necessary for a credit repair organization to be a defendant, so long as the claim against the non-credit repair organization person is related to the practices, services or conduct of a credit repair organization. For example, if a person, who is not a credit repair organization and is not affiliated with a credit repair organization as its officer, employee or agent, nonetheless joins with or assists a credit repair organization in the misrepresentation of a consumer's creditworthiness to a consumer reporting agency, creditor or potential creditor, that person could be liable for having violated a practice prohibited under § 1679b(a)(1). That person could not avoid liability, even if the credit repair organization was not named as a co-defendant or did not participate in the prohibited practice, so long as the credit repair organization's involvement, innocent or otherwise, was well-pled in the complaint and ultimately proven.

The facts in *Vance v. National Benefit Association, supra,* can be instructive. In that case, the defendant bank was held not to be a credit repair organization, but its alleged misdeeds involved its misrepresentation of the services of a credit repair organization, a violation of §§ 1679b(a)(3) and (4). To make a point, if these facts are slightly altered so that the misrepresentation had been about the consumer's creditworthiness then the claim would have been for a violation of § 1679b(a)(1), the CROA section relied on by Wright in this case. Even under these altered facts the bank would remain liable under CROA because a credit repair organization was involved in the transaction. Under such circumstances the purpose of the Act is served.

-22-

rise to Wright's claims do not involve the credit repair industry or anyone who remotely satisfies the definition of a credit repair organization under § 1679a(3). The alleged misrepresentations made by the Movants about Wright's creditworthiness were not made in the context of repairing her credit, and regardless of how liberally the facts in the amended complaint are viewed, there is no credit repair organization in sight. When the reported cases finding liability under CROA are carefully scrutinized, even those from the Northern District of Illinois, there is little authority supporting Wright's position. Simply stated, considering the Act in its entirety, as opposed to piecemeal, together with the congressional findings and purposes, leads this Court to conclude liability under §1679b(a)(1) is limited to matters involving a credit repair organization in some form or fashion. There is no such involvement in this case.

For the reasons stated herein, the Movants' motions for summary judgment are due to be GRANTED. Pursuant to Rule 9021 of the Federal Rules of Bankruptcy Procedure, a separate order will be entered in this Adversary Proceeding reflecting the findings and rulings of this Opinion.

Dated: May 16, 2007

/s/ James J. Robinson
JAMES J. ROBINSON
United States Bankruptcy Judge

-23-